Filed 8/26/25  P. v. Ramirez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052376 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 19CR013754) |
| v. | |
| LEONARDO RAMIREZ, JR., | |
| Defendant and Appellant. | |

A jury convicted defendant Leonardo Ramirez, Jr., of rape by force or fear and other offenses after he entered the home of a 10-year-old relative through a window and raped the child in her bed while possessing a weapon.  The trial court imposed a sentence of life without the possibility of parole.

In Ramirez's initial appeal, this court reversed the judgment and remanded the matter for resentencing to allow the trial court to exercise its discretion under amendments to Penal Code section 654 that took effect after Ramirez's sentencing hearing.[1]  (*People v. Ramirez* (Oct. 18, 2023, H049145) [nonpub. opn.].)  At resentencing, the trial court again imposed a sentence of life without the possibility of parole.

Ramirez's sentence renders him ineligible for youth offender parole consideration under section 3051 and elderly parole consideration under section 3055.  He argues his

_____

[1] Unspecified statutory references are to the Penal Code.

ineligibility for these forms of parole consideration violates his right to equal protection of law under the Fifth and Fourteenth Amendments to the United States Constitution. We conclude that Ramirez forfeited his equal protection claim by failing to raise it at resentencing, and that in any event, his claim fails on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Summary*

A detailed summary of the evidence at trial is not necessary to resolve the issue presented in this appeal.[2] A more extended summary of the factual background is contained in this court's opinion in Ramirez's initial appeal.

Briefly, Ramirez raped a 10-year-old relative in her bedroom, holding a "gas pistol" in the attack. The victim reported the attack but could not initially identify the assailant, who wore a hoodie and a mask. Two years later, Ramirez contacted the victim through Snapchat, which caused the victim to suspect Ramirez was her attacker and to report this to police. A DNA sample from Ramirez produced a "very strong" indication of a match with the profile of male DNA gathered from the attack. Ramirez then made several admissions to police, including that he got on top of the girl as she struggled, told her to be quiet, rubbed his penis on the girl, had the "gas pistol" with him, and engaged in his actions to make the girl's older sister "pay" for comments the older sister made electronically about Ramirez's wife. At trial, Ramirez testified that he went to the girl's house "[t]o reprimand the attitude of a person who was bothering me and my wife through text messages." He denied attempting to penetrate the victim, but he admitted to rubbing his penis on the girl, stating: "It was just to do a mischievous act and leave out of there quickly."

Ramirez was about three months shy of turning 26 years old at the time of the charged offenses.

---

[2] This court granted Ramirez's request to take judicial notice of the record in Ramirez's initial appeal from the judgment.

A jury convicted Ramirez of rape by force or fear (§ 261, subd. (a)(2); count 1), lewd or lascivious act involving force or fear with a child (§ 288, subd. (b)(1); count 2), and sexual intercourse with a child 10 years old or younger (§ 288.7, subd. (a); count 3). With respect to count 1, the jury found true allegations that Ramirez personally inflicted bodily harm on the child (§ 667.61, subds. (d)(7) & (j)(1)), that Ramirez committed the offense during the commission of a burglary and personally used a dangerous or deadly weapon (*id.*, subds. (e)(2), (3) & (j)(1)), and that Ramirez committed the offense against a child under the age of 14 years (§ 264, subd. (c)(1)). With respect to count 2, the jury found true allegations that Ramirez committed the offense during the commission of a first degree burglary and that the victim was a child (§ 667.61, subds. (d)(4) & (j)(1)), that Ramirez committed the offense during the commission of a burglary and personally used a dangerous or deadly weapon (*id.*, subds. (e)(2), (3) & (j)(1)), and that Ramirez personally inflicted bodily harm on the child (*id.*, subds. (d)(7) & (j)(1)).

The trial court sentenced Ramirez to life without parole for each of counts 1 and 2 and 25 years to life for count 3, with the sentences for counts 2 and 3 stayed pursuant to section 654. Ramirez did not raise an equal protection challenge at the sentencing hearing.

**B. *Initial Appeal***

Ramirez appealed from the judgment. He contended his case must be remanded so the trial court could determine anew which offenses should have their punishment stayed under amendments to section 654 that took effect after his sentencing hearing. Among other issues, he also asserted that his ineligibility for youth offender parole consideration violated his right to equal protection of law. This court reversed the judgment and remanded the matter to the trial court for resentencing on the section 654 issue. We determined that Ramirez's remaining contentions, including his equal protection claim, did not need to be addressed at that point and Ramirez could elect to

3

raise these arguments to the trial court to resolve in the first instance at resentencing. (*Ramirez*, *supra*, H049145.)

### C. *Resentencing*

Upon remand, the defense asserted in its sentencing memorandum and at the resentencing hearing that a sentence of 25 years to life was appropriate based on the presence of two mitigating factors and the absence of any pleaded or proven aggravating factors. Ramirez's counsel also noted that Ramirez was ineligible for youth offender parole consideration under section 3051, subdivision (h), and thus Ramirez's only opportunity for parole would be a 25-years-to-life sentence. Ramirez's counsel did not raise an equal protection claim concerning Ramirez's ineligibility for youth offender parole or elderly parole consideration.

The trial court again imposed a life without parole sentence, consisting of life without parole for count 1, life without parole stayed under section 654 for count 2, and 25 years to life stayed under section 654 for count 3. Following announcement of the sentence, Ramirez's counsel stated: "I would like to make objections on cruel and unusual punishment grounds and on due process grounds to the sentence." The trial court overruled these objections. Ramirez's counsel did not raise an equal protection claim.

This appeal timely followed.

## II. DISCUSSION

Ramirez asserts that his right to equal protection under the federal Constitution was violated because his life without parole sentence makes him statutorily ineligible for youth offender parole consideration under section 3051 and for elderly parole consideration under section 3055.[3] He argues there is no rational basis for distinguishing

---

[3] Ramirez only alleges an equal protection violation under the federal Constitution. "Both the state and federal Constitutions extend to persons the equal protection of law. [Citations.] Though this court's analysis of state constitutional requirements sometimes deviates from how comparable federal requirements are analyzed, our precedent has not distinguished the state and federal guarantees of equal protection for claims arising from

4

between young adult offenders sentenced to life with the possibility of parole (who are eligible for youth offender parole and elderly parole consideration) and similarly situated offenders sentenced to life without parole (who are not eligible for these forms of parole consideration). He contends this claim is cognizable on appeal despite not raising this issue at sentencing or resentencing, he received ineffective assistance of counsel if this issue is considered forfeited, and sufficient rationale does not justify his ineligibility for both types of parole consideration. He asserts that he brings an as-applied constitutional challenge to his ineligibility for parole consideration under sections 3051 and 3055 based on his non-homicide conviction and his lack of recidivist history. The Attorney General contends Ramirez forfeited the equal protection challenge, and alternatively that Ramirez's claim fails on the merits.

A. *Legal Principles and Standard of Review*

We review claims of an equal protection violation based on statutory ineligibility for parole consideration de novo. (See *People v. Morales* (2021) 67 Cal.App.5th 326, 345.) However, an equal protection claim that is not raised in the trial court is forfeited on appeal. (*People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; *People v. Rogers* (2006) 39 Cal.4th 826, 854; *People v. Gray* (2024) 101 Cal.App.5th 148, 168.) A reviewing court may exercise its discretion to reach the merits of an equal protection claim based on a facial challenge that was not raised below, because unlike as-applied constitutional claims, facial challenges involve pure questions of law that are not "correctable only by examining factual findings in the record or remanding to the trial court for further findings." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887.)

Section 3051, subdivision (a) provides for a youth offender parole hearing "for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or

---

allegedly unequal consequences associated with different types of criminal offenses. [Citations.]" (*People v. Chatman* (2018) 4 Cal.5th 277, 287.)

5

younger . . . at the time of the controlling offense." However, subdivision (h) of section 3051 states that youth offender parole hearings are not available where sentencing occurred pursuant to section 667.61 (the One Strike law) or where the individual was sentenced to life without parole for a controlling offense committed after the person attained 18 years of age, among other exceptions.

Section 3055, subdivision (a) establishes the Elderly Parole Program "for purposes of reviewing the parole suitability of any inmate who is 50 years of age or older and has served a minimum of 20 years of continuous incarceration on the inmate's current sentence, serving either a determinate or indeterminate sentence." Subdivision (g) states that parole under this section does not apply in cases where the individual was sentenced to life without parole, among other exceptions.

In two recent decisions, the California Supreme Court has rejected claims of equal protection violations involving ineligibility for section 3051 parole consideration.

First, in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*), the California Supreme Court held that section 3051's exclusion of young adult offenders sentenced to life without parole for special circumstance murder does not violate equal protection guarantees. (*Hardin*, *supra*, at p. 839.) The court concluded that a rational basis existed for excluding Hardin as a person sentenced to life without parole for special circumstance murder, stating: "Under California law, special circumstance murder is a uniquely serious offense, punishable only by death or life without possibility of parole. When it was considering whether to expand the youth offender parole system to include not only juvenile offenders but also certain young adults, the Legislature could rationally balance the seriousness of the offender's crimes against the capacity of all young adults for growth, and determine that young adults who have committed certain very serious crimes should remain ineligible for release from prison. Hardin has not demonstrated that the Legislature acted irrationally in declining to grant the possibility of parole to young adult

6

offenders convicted of special circumstance murder, even as it has granted youth offender hearings to young adults convicted of other offenses." (*Ibid.*)

While the court's holding was based on Hardin's conviction for special circumstance murder, the court also held that to the extent Hardin's challenge was to the life without parole exclusion on its face, such a claim failed. (*Id.* at pp. 839, 847.) Our Supreme Court stated: "Life without parole is the most severe sentence of imprisonment in California law, applicable only in cases of special circumstance murder and a small number of other offenses the law regards as particularly serious. By excluding persons sentenced to life without parole from youth offender parole proceedings, the Legislature exercised its prerogative to define degrees of culpability and punishment by leaving in place longstanding judgments about the seriousness of these crimes and, relatedly, the punishment for them." (*Id.* at p. 853, fn. omitted.)

Second, months after issuing its decision in *Hardin*, the California Supreme Court held in *People v. Williams* (2024) 17 Cal.5th 99 (*Williams*) that section 3051's exclusion of individuals convicted of forcible sexual offenses and sentenced under the One Strike law does not constitute an equal protection violation. (*Williams*, *supra*, at pp. 127-128.) The court concluded that the Legislature could rationally exclude One Strike offenders from youth offender parole consideration "based on a combination of concerns: the increased risk of recidivism that One Strike offenders pose and the aggravated nature of their offenses." (*Williams*, *supra*, at pp. 127-128, fn. omitted.) The court stated the Legislature "had significant concerns regarding recidivism of One Strike offenders and the serious nature of the offenses they commit" in enacting the One Strike law, and "[t]he Legislature could rationally conclude, based on its view that a One Strike sex offender's risk of recidivism is high, that rehabilitation is unlikely, and therefore these offenders would not likely be eligible for parole, much less early parole under section 3051." (*Id.* at p. 129.)

Our Supreme Court concluded that "[t]he exclusion of One Strike offenders from section 3051 . . . reflects a legislative judgment that extending the possibility of early release to young adult One Strike offenders would be neither productive nor appropriate," and "[i]nsofar as the One Strike law itself reflects significant concerns about the risk of reoffending, this judgment is consistent with the common sense view that a defendant who reoffends after a prior conviction is 'less amenable to rehabilitation than a person who has not done so.' [Citation.]" (*Id.* at p. 130.) The court further stated: "Excluding youthful One Strike offenders from early parole consideration is also consistent with the Legislature's apparent concern with protecting the public from persons who have committed serious sex offenses, given the risk of reoffense. These concerns are 'realistically conceivable' and provide a rational basis for section 3051's One Strike exclusion. [Citation.]" (*Ibid.*)

**B.** *Analysis*

**1.** *Ramirez has forfeited his equal protection claim.*

Based on the procedural history of this case, we conclude that Ramirez forfeited his equal protection claim concerning his ineligibility for youth offender parole and elderly parole consideration. Ramirez did not allege an equal protection violation in his original sentencing hearing. Ramirez did raise an equal protection claim in his initial appeal to this court. This court determined that because the case was being remanded for full resentencing, Ramirez could raise his equal protection claim to the trial court to resolve in the first instance. Despite having the opportunity to raise the issue on remand to the trial court, Ramirez elected not to do so, although he did raise cruel and unusual punishment and due process objections to his sentence. On appeal, Ramirez emphasizes that his challenge to his ineligibility for parole consideration is not facial but as applied. However, an as-applied challenge must be raised at the trial court level. (See *In re Sheena K.*, *supra*, 40 Cal.4th at p. 885; *People v. Gomez* (2025) 110 Cal.App.5th 419, 437.)

Ramirez argues forfeiture should not apply because at the time of resentencing, the First District Court of Appeal, Division Four had not yet issued its opinion in *People v. Briscoe* (2024) 105 Cal.App.5th 479 (*Briscoe*), a case he asserts supports his equal protection argument. He asserts the post-resentencing change in the law effected by *Briscoe* weighs against application of forfeiture here. However, *Briscoe* is inapposite to the instant case.

In *Briscoe*, the defendant was sentenced to life without parole for a special circumstance murder committed when he was 21 years old. (*Briscoe*, *supra*, 105 Cal.App.5th at p. 484.) The special circumstance found true in Briscoe's case was that he acted with reckless indifference to human life and was a major participant in the underlying felonies of robbery and burglary, as specified in section 190.2, subdivision (d). (*Briscoe*, *supra*, at p. 485.) Briscoe alleged that section 3051's life without parole exclusion "violates equal protection by excluding youth offenders sentenced for special circumstance murder under section 190.2, subdivision (d)—which applies to nonkiller participants in specified felony offenses during which a murder occurred—while including those convicted of nonspecial circumstance first degree felony murder for the same specified felony offenses per the exact same standard under section 189, subdivision (e)(3)." (*Briscoe*, *supra*, at p. 485.)

The Court of Appeal agreed that "[i]n the narrow factual context presented here," Briscoe established an equal protection violation. (*Briscoe*, *supra*, 105 Cal.App.5th at p. 485.) The court recognized that *Hardin* foreclosed Briscoe's challenge to section 3051's exclusion of young adult special circumstance murderers generally, but it stated that *Hardin* "expressly did 'not foreclose . . . other challenges to the distinctions drawn by the special circumstances statute based on a more robust record or a more focused as-applied inquiry.' [Citation.]" (*Briscoe*, *supra*, at p. 489; see *id.* at p. 487.) The Court of Appeal then held that section 189, subdivision (e)(3), which defines felony murder, and the special circumstance in section 190.2, subdivision (d) "employ the same

9

standard of liability" by both requiring that a person who is not the actual killer or did not have the intent to kill be a major participant in the underlying felony who acts with reckless indifference to human life. (*Briscoe*, *supra*, at p. 489.) The court in *Briscoe* stated that the Legislature enacted section 189, subdivision (e)(3) after the most recent expansion of section 3051, and "[t]he result is an irrational distinction between equally culpable youth offenders seeking parole that the Legislature did not contemplate." (*Briscoe*, *supra*, at p. 490.) The court then concluded that this distinction amounted to an equal protection violation, holding that no rational basis justified the disparity. (*Id.* at pp. 492-496.)

*Briscoe* does not represent a change in the law that would excuse forfeiture here. *Briscoe* dealt with a particular type of special circumstance murder. Its holding was based on the fact that major participants in underlying felonies who act with reckless indifference to human life are permitted youth offender parole consideration in some situations but excluded from such consideration in other situations. *Briscoe* recognized that as-applied challenges to section 3051's life without parole exclusion are not necessarily prohibited post-*Hardin*, which *Hardin*, issued before Ramirez's resentencing, itself made clear. In addition, Briscoe preserved his claim for appeal by moving for a section 3051 hearing and raising an equal protection challenge to the trial court. (*Briscoe*, *supra*, 105 Cal.App.5th at p. 486.)

At the time of Ramirez's resentencing, the California Supreme Court had not yet issued its decision in *Williams*, which resolved a "split of authority" on the issue of whether section 3051's exclusion of One Strike offenders violated equal protection guarantees. (*Williams*, *supra*, 17 Cal.5th at p. 113.) As a result, Ramirez could have relied on authority that *Williams* had not yet overturned to support his argument that section 3051's One Strike offender exclusion amounted to an equal protection violation as applied to him. Likewise, if Ramirez believed *Hardin* was distinguishable based on his as-applied challenge, he could have raised this issue to the trial court at resentencing

10

to resolve any factual issues inherent in such an as-applied challenge.  We thus conclude that his failure to raise any equal protection challenge at resentencing forfeits his claim on appeal.[4]

### 2. *Ramirez's equal protection claim also fails on the merits.*

Ramirez argues he received ineffective assistance of counsel if his equal protection challenge is considered forfeited.  To prevail on an ineffective assistance of counsel claim, a criminal defendant must establish both that his or her counsel's performance was deficient and that he or she suffered prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)  The deficient performance component of an ineffective assistance of counsel claim requires a showing that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms.  (*Id.* at p. 688.)  "Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.]"  (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)  Regarding prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland*, *supra*, at p. 694.)

We determine that even if Ramirez's equal protection challenge were not deemed forfeited, the claim would fail on the merits.  Ramirez raises an as-applied challenge to his statutory exclusion from youth offender parole and elderly parole consideration based on his life without parole sentence.  He would normally be limited to raising a facial challenge based on his failure to assert an equal protection violation to the trial court.

---

[4] Ramirez's election not to pursue on remand a claim he had made in his first appeal also may suggest waiver, which involves "an express relinquishment of a known right . . . ."  (*People v. Romero* (2008) 44 Cal.4th 386, 411.)

11

However, even considering the merits of his as-applied challenge, Ramirez cannot distinguish his case from the holdings in *Hardin* and *Williams* that section 3051's life without parole and One Strike exclusions survive equal protection rational basis review.

Regarding section 3051's life without parole exclusion, Ramirez attempts to distinguish his situation from that in *Hardin* by arguing that he "brings a slightly different, as applied challenge to the differences in treatment of non-killer youths lacking recidivist history who are unequally denied an opportunity at youth and elderly parole" without adequate justification. However, while *Hardin* did not rule out other as-applied challenges to section 3051's life without parole exclusion, our Supreme Court also stated that the life without parole exclusion represents a rational decision by the Legislature to define degrees of culpability and punishment. (*Hardin*, *supra*, 15 Cal.5th at p. 853.) Ramirez's attempt to distinguish *Hardin* on the basis that he was not convicted of a homicide offense is not convincing. The Legislature had a rational basis to exclude life without parole offenders; the rationality of this exclusion does not change based on the nature of Ramirez's offenses.[5]

Ramirez attempts to distinguish *Williams* by primarily relying on *Briscoe*, a decision we have already explained is inapposite here. *Williams* squarely rejected the position that the ineligibility of One Strike offenders for youth offender parole consideration constitutes an equal protection violation, and Ramirez provides no basis for concluding his situation presents any different equal protection concerns from those in *Williams*.

Ramirez also argues that heightened scrutiny should apply here, because section 3051 infringes on a fundamental liberty interest. However, both *Hardin* and

---

[5] To the extent Ramirez argues that factors specific to his case such as his lack of recidivist history and his non-homicide convictions weigh against the rationality of his section 3051 exclusion, the serious nature of his offenses and the fact he was only three months shy of his 26th birthday conversely support the rationality of his exclusion.

*Williams* applied rational basis review concerning the same two exclusions Ramirez challenges.  (*Hardin*, *supra*, 15 Cal.5th at p. 839; *Williams*, *supra*, 17 Cal.5th at p. 124.)  The court in *Williams* stated that "the right to early release on parole" does not "involve a fundamental constitutional right.  [Citation.]"  (*Williams*, *supra*, at p. 123.)  Thus, Ramirez fails to demonstrate that his case warrants a different outcome from the conclusions in *Hardin* and *Williams* based on the level of scrutiny that should apply.

Ramirez also challenges his ineligibility for elderly parole consideration under section 3055, subdivision (g) due to his life without parole sentence.  Even assuming forfeiture does not apply, Ramirez has not established an equal protection violation in this regard.  The California Supreme Court held in *Hardin* that section 3051's life without parole exclusion is constitutional even though it recognized the Legislature's "primary purpose in expanding section 3051 to include young adult offenders was to give these young persons the opportunity to obtain release based on demonstrated growth and rehabilitation."  (*Hardin*, *supra*, 15 Cal.5th at p. 854.)  By contrast, section 3055's "main purpose was to curb rising medical costs of the geriatric inmate population and to provide a 'compassionate' release for those elderly individuals.  [Citation.]"  (*People v. Contreras* (2018) 4 Cal.5th 349, 374-375.)  "In contrast to the statute authorizing youth offender parole hearings, the text of the elderly parole statute does not mention youth-related considerations or rehabilitation.  [Citation.]"  (*Id.* at p. 375.)  While the life without parole exclusion may arguably brush against section 3055's aims to curb medical costs and to provide a compassionate release for elderly individuals, Ramirez provides no basis to conclude that section 3055's purpose is any more at odds with a life without parole exclusion than section 3051's purpose.[6]  Further, rational basis review is "necessarily

_____

[6] The court in *Williams* observed that "One Strike offenders, like defendant, who are not sentenced to [life without parole] are entitled to elderly parole consideration at the age of 50 if they have served a minimum of 20 years continuously on their current sentence.  [Citation.]"  (*Williams*, *supra*, 17 Cal.5th at p. 132.)  However, the court in

13

deferential," under which "[r]espect for the Legislature's proper role—and ours—means that we may not strike down [a criminal statute] unless the challengers demonstrate that 'there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citation.]" (*Hardin*, *supra*, at p. 839.) The Legislature could rationally conclude that any cost savings or compassion-based concerns did not justify granting elderly parole consideration to individuals sentenced to life without parole, "the most severe sentence of imprisonment in California law . . . . ." (*Id.* at p. 853.)

Under the deferential rational basis standard, the Legislature did not violate Ramirez's equal protection rights by excluding him from youth offender parole and elderly parole consideration. Because Ramirez's equal protection argument fails on the merits, his counsel was not ineffective for failing to raise an equal protection claim to the trial court. "Representation does not become deficient for failing to make meritless objections." (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

### III. DISPOSITION

The judgment is affirmed.

---

*Williams* did not examine whether section 3055's life without parole exclusion violated equal protection guarantees.

14

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.



_____
Lie, J.



H052376
People v. Ramirez